UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL CLEMENTE; and QUEENIE CLEMENTE,

                              Plaintiffs,

v.                                                                 1:21-CV-1051 (GTS/ML)

FRANK A. CLEMENTE, JR., in his capacity as
Trustee of the Clemente Qualified Personal Residence
Trust I [Troy, New York], and also in his capacity as
Trustee of the Mary Ellen Clemente Revocable Trust
U/A dated September 29, 2019, as Amended on
April 23, 2021, and also in his individual capacity; and
MARIBETH CLEMENTE,

                              Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

MANDEL CLEMENTE, P.C.              LINDA A. MANDEL CLEMENTE, ESQ.
  Counsel for Plaintiffs
77 Troy Road, Suite 1
East Greenbush, NY 12061

WHITE OSTERMAN & HANNA LLP      JENNIFER THOMAS, ESQ.
  Counsel for Defendants                    SCOTT A. BARBOUR, ESQ.
One Commerce Plaza
99 Washington Avenue, Suite 1900
Albany, NY 12210

GLENN T. SUDDABY, United States District Court Judge:

## DECISION and ORDER

     Currently before the Court, in this action by Paul and Queenie Clemente ("Plaintiffs") against Maribeth Clemente and Frank Clemente Jr. ("Defendants") pursuant to 28 U.S.C. § 1332(a)(1), is Defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to

1

Fed. R. Civ. P. 12(b)(1). (Dkt. No. 8.) For the reasons set forth below, Defendants' motion is granted.

I. BACKGROUND

A. Summary of Factual Allegations of Plaintiffs' Complaint[1]

Plaintiffs' allegations in this case sprawl across 39 pages in the Complaint and paint a vivid picture of family drama. (Dkt. No. 1.) For brevity's sake, the Court will focus only on the most relevant alleged facts herein.

Plaintiff Paul Clemente is the son of Frank A. Clemente, *Sr.* ("Frank Sr."), and Mary Ellen Clemente, who also had several other children including Defendants Frank Clemente, Jr., and Maribeth Clemente. (Dkt. No. 1, ¶¶ 19-50.) Paul Clemente and his wife, co-Plaintiff Queenie Clemente, took care of Frank Sr. and Mary Ellen for a period of roughly ten years at the family home in Troy, New York. (*Id.*, ¶ 23.) During this time, Plaintiffs made great personal sacrifices and were promised fair compensation for their services. (*Id.*, ¶¶ 39-49.) Plaintiffs also stored many of their personal possessions at the family home. (*Id.*, ¶¶ 7, 41.)

In March of 2016, Frank Sr. passed away. (Dkt. No. 1, ¶ 50.) On April 23, 2021, Mary Ellen assigned the interest in all of her assets to the Mary Ellen Revocable Trust (the "Revocable Trust"). (Dkt. No. 21-1.) Several other family trusts date back to the 1990s. (Dkt. No. 1, ¶¶ 48, 54.) Plaintiffs brought proceedings seeking accounting of these family trusts, which led to increasing conflict with Defendants. (*Id.*, ¶ 67.) Mary Ellen passed away on July 8, 2021, and all of her assets were conveyed to the Revocable Trust. (*Id.*, ¶¶ 3, 96, 118.) Defendant Frank A. Clemente, Jr., is the trustee of the Revocable Trust. (*Id.*, ¶ 15.)

---

[1]  The facts alleged in the Complaint are assumed to be true for purposes of this decision only. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citations omitted).

The Clemente family home in Troy is now owned by the Clemente Qualified Personal Residence Trust 1 ("QRPT Trust"), of which Defendant Frank A. Clemente, Jr., is the successor Trustee. (Dkt. No. 1, ¶¶ 4-5.) Plaintiffs have never been paid for their years of service to the Clemente parents. (*Id.*, ¶¶ 2-3.) Their personal possessions stored at the family home have never been returned. (*Id.*, ¶¶ 4, 6-7.)

### B. Actions Pending in Surrogate's Court

Plaintiffs allege that the Rensselaer County Surrogate's Court has recently appointed the Rensselaer County Public Administrator to administer the estate of Frank Sr. (Dkt. No. 1, ¶ 11.) Plaintiffs have also filed a formal claim against Frank Sr.'s estate in Surrogate's Court for their expenses incurred in caring for the Clemente parents. (*Id.*, ¶ 73.) According to Plaintiffs, "[i]ncluded in that filed claim was a statement those same claims existed against Mary Ellen Clemente." (*Id.*) The Notice of Claim filed in Surrogate's Court in January of 2018 states that Plaintiffs seek more than one million dollars as compensation for their services to the Clemente parents. (Dkt. No. 8-3, at 2-8.)

In total, there are four actions involving Frank Sr.'s estate pending in Surrogate's Court: (1) probate; (2) accounting; (3) appointment of public administrator; and (4) appointment of successor Trustee. (Dkt. No. 8-1, at 2.) There are also three ongoing actions: (1) the Mary Ellen Clemente "QTIP" Trust; (2) the QRPT Trust; and (3) the Clemente Two-Year Grantor Retained Annuity Trust (the "GRAT" Trust). (*Id.*, at 2-3.)

Plaintiffs allege that there have been proceedings since 2017 regarding the "GRAT Trust," which "revealed a failure to account for over a million dollars in asset proceeds, a mixing and mingling of the assets of other trusts, as well as significant diversion and self dealing of funds from the GRAT Trust by the now-deceased David Clemente." (Dkt. No. 1, ¶

3

54.) Plaintiffs allege that Paul Clemente has "spent four years, and more than two hundred thousand dollars of his own money on legal fees for a petition, and repeated motions, just to get a basic and spotty accounting of the GRAT Trust." (*Id.*, ¶ 75.)

### C. Plaintiffs' Claims

In general, Plaintiffs claim that they are owed money for their services to the Clemente parents, and that Mary Ellen Clemente's assets were fraudulently transferred to the Revocable Trust in violation of NY Debtor and Creditor Law §§ 273, 274, and 276. (Dkt. No. 1, ¶¶ 114–138.) As creditors of Mary Ellen Clemente, Plaintiffs seek to void the transfer of her assets so that they can be compensated. (*Id.*) Plaintiffs also bring a claim for right of inspection/access and replevin, seeking to recover personal belongings which remain at the Clemente family home. (*Id.*, ¶¶ 139–151.)

## II. THE PARTIES' BRIEFING ON DEFENDANTS' MOTION

### A. Defendants' Memorandum of Law

Defendants seek dismissal on two main grounds: (1) the Court should abstain from hearing Plaintiffs' case pursuant to the doctrine set forth in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976); and (2) in any event, Plaintiffs have failed to state a claim upon which relief can be granted. (Dkt. No. 8-5.) More specifically, with regard to the first ground, Defendants argue that the Court should abstain, because parallel proceedings are taking place in Surrogate's Court, having substantially the same parties, subject matter, and relief sought as in the current action. (*Id.*, at 9-11.) Defendants also argue that each of the six *Colorado River* factors supports abstention. (*Id.*, at 11–17.)

### B. Plaintiffs' Opposition Memorandum of Law

In response, Plaintiffs assert two arguments: (1) abstention is not warranted; and (2) they have properly stated claims. (Dkt. No. 20.) More specifically, with regard to the first argument, Plaintiffs argue that the proceedings are not parallel, noting that Mary Ellen Clemente's estate and the Revocable Trust are central to this case but not directly at issue in the Surrogate's Court proceedings. (*Id.*, at 7.) Plaintiffs do not explicitly address all of the *Colorado River* factors, but they argue that the Surrogate's Court proceedings are still at an early stage of litigation and cannot adequately protect their rights. (*Id.*, at 8-11.)

### C.  Defendants' Reply Memorandum

In their reply, Defendants again argue that the proceedings are parallel, that *Colorado River* abstention does not require identical proceedings, and that the relief requested by Plaintiffs in this action is the same as sought in Surrogate's Court. (Dkt. No. 22, at 6-10.) Defendants also argue that Plaintiffs have failed to meaningfully dispute their analysis of the *Colorado River* factors. (*Id.*, at 11-12.)

### III.  RELEVANT LEGAL STANDARD

"A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1)." *City of N.Y. v. Milhelm Attea & Bros., Inc.*, 550 F.Supp.2d 332, 341 (E.D.N.Y. 2008). As with a motion to dismiss for lack of subject-matter jurisdiction, the reviewing court may look to evidence outside of the pleadings. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). In this context, "the burden of persuasion "rest[s] on the party opposing the exercise of federal jurisdiction." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985).

Under the *Colorado River* abstention doctrine, a federal court may abstain from exercising jurisdiction in "exceptional circumstances" where "parallel state-court litigation

could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River*, 424 U.S. at 813, 817-18). In determining whether *Colorado River* abstention is appropriate, courts consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100-01 (quoting *Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 [2d Cir. 2001]).

The Supreme Court has explained that none of these factors alone is necessarily determinative, but that, instead, a federal district court must engage in a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise . . . . Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818-19 (citation omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (explaining that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case"). Moreover, "[w]here a *Colorado River* factor is facially neutral, that 'is a basis for retaining jurisdiction, not for yielding it.'" *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522).

"Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are 'parallel.'" *Dalzell Mgmt. Co., Inc. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 597 (S.D.N.Y. 2013) (citing *Dittmer v. Cty. of Suffolk*, 146 F.3d 113,

6

118 [2d Cir. 1998]).  "Federal and state proceedings are 'parallel' for purposes of abstention when the two proceedings 'are essentially the same,' meaning that 'there is an identity of parties, and the issues and relief sought are the same.'"  *Dalzell*, 923 F. Supp. 2d at 597 (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 [S.D.N.Y. 2012]).

Nevertheless, "[p]erfect symmetry of parties and issues is not required.  Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Shields*, 891 F. Supp. 2d at 577.  "Further, if the court has 'any doubt' regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction."  *Dalzell*, 923 F. Supp. 2d at 573-74.  "Finally, if a court finds that the federal and state actions are not parallel, *Colorado River* abstention does not apply, whether or not issues of state law must be decided by the federal court."  *Id.* (internal quotation marks omitted).

IV.    ANALYSIS

   A.  **Whether the State Actions Are Parallel to the Present Action**

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated by Defendants in their memorandum of law and reply.  Although the matters in Surrogate's Court are not identical to this action, they are substantially similar.  The parties in this case are all involved in the Surrogate's Court proceedings, even if their capacities may vary. And crucially, the gravamen of this case—Plaintiffs' allegedly unpaid services to the Clemente parents—is also at issue in Surrogate's Court.  The Complaint indicates as much: Plaintiffs allege that they have a filed a claim in Surrogate's Court against Frank Sr.'s estate for their expenses, and that "those same claims existed against Mary Ellen Clemente."  (Dkt. No. 1, ¶ 73.)  The Notice of Claim makes clear that Plaintiffs are seeking to recover against both

Clemente parents, (Dkt. No. 8-3), which would encompass the relief sought here. *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295-97 (S.D.N.Y. 2017) (finding that federal action was parallel to litigation in Surrogate's Court because they involved the same issues and events and "the introduction of theories of recovery in this Court that would necessarily interfere with the Surrogate's Court proceeding").

Accordingly, the Court finds that there is a substantial likelihood that the Surrogate's Court proceedings will effectively dispose of Plaintiffs' claims in this case.[2] Because the proceedings are parallel, the Court will proceed to consideration of the six factors set forth in *Colorado River*.

### B.  Whether the *Colorado River* Factors Weigh in Favor of Abstention

After carefully considering the matter, the Court answers this question in the affirmative, for largely the reasons stated by Defendants in their memorandum of law and reply. The Court expands on those reasons as follows.

#### a.  Jurisdiction Over A Res

There is no dispute that the Surrogate's Court has assumed jurisdiction over the QPRT Trust, which is the subject of Plaintiffs' third claim. The other two claims revolve around the assets Mary Ellen Clemente transferred to the Revocable Trust. Although the Revocable Trust is not directly at issue in Surrogate's Court, the administration of Frank Sr.'s estate would almost certainly affect the assets in the trust, as they were passed from Frank Sr. to Mary Ellen. Therefore, this factor weighs in favor of abstention.

---

[2]  Plaintiffs assert in their memorandum of law that "there are insufficient assets in the Frank A. Clemente estate to satisfy the claims of the Plaintiffs." (Dkt. No. 20, at 9.) Plaintiffs do not cite to any source for this assertion, which does not appear in their Complaint. In any event, the fact that Plaintiffs might be able to obtain less recovery in Surrogate Court would not defeat parallelism, because the underlying claims remain essentially the same.

### b. Inconvenience of Federal Forum

In terms of geography, there is little difference in convenience to the parties between the Surrogate's Court in Troy, New York, and the federal courthouse in Albany. But the Court recognizes that the vast majority of Clemente family litigation is in Surrogate's Court. At a minimum, it would pose an inconvenience to Defendants to open a new front in federal court. Thus, this factor weighs in favor abstention. *See Phillips*, 252 F. Supp. 3d at 299 (finding that the inconvenience of having to actively litigate in both state and federal court weighed "at least modestly" in favor of abstention).

### c. Avoidance of Piecemeal Litigation

The avoidance of piecemeal litigation is a "'paramount consideration' when a failure to abstain may result in 'inconsistent dispositions' that 'would breed additional litigation on assertions of claim and issue preclusion.'" *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 377 (S.D.N.Y. 2020) (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 [2d Cir. 1985]) (brackets omitted).

The Court finds that this factor weighs in favor of abstention. As discussed above, there are seven active proceedings in Surrogate's Court involving the Clemente family affairs that have been going on for years. To add an eighth in federal court would further fracture matters and risk overlapping and/or inconsistent determinations that might lead to even more litigation. *See Bertrand v. Demmon*, 14-CV-1456, 2017 WL 2303994, at *7 (N.D.N.Y. May 26, 2017) (finding that this factor weighed "strongly" in favor of abstention based in part on "the potential for inconsistent outcomes as well as the potential for issue preclusion once a final decision is rendered in one of the two forums"); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 275 (S.D.N.Y. 2009) ("[I]f plaintiff were to be allowed to pursue some or all of her remaining

claims here while there was a continuing proceeding in the New York County Surrogate's Court, the parties would face the almost inevitable prospect of piecemeal, and indeed duplicative, litigation.").

### d. Order in Which Jurisdiction Was Obtained

"This factor examines how much relative progress has been made in the actions and when each action began." *Phillips*, 252 F. Supp. 3d at 301. The record shows that litigation involving Frank Sr.'s estate has been pending in Surrogate's Court since 2016. (Dkt. No. 8-1, ¶ 4.) Litigation involving Mary Ellen has been pending there since 2017, and the Surrogate's Court assumed jurisdiction over the QPRT Trust in the same year. (*Id.*) The GRAT Trust followed in 2018. (*Id.*) All of these cases predate the filing of the Complaint in this case on September 22, 2021. (Dkt. No. 1.) Although Plaintiffs argue that the Surrogate's Court matters are not far along, the Complaint alleges that Plaintiffs have already filed a claim against Frank Sr.'s estate and have spent four years and over two hundred thousand dollars litigating the GRAT Trust matter. (*Id.*, ¶¶ 51, 73, 75.) In contrast, this case is still in its infancy. Based on these facts, the Court finds that this factor supports abstention.

### e. Applicable Law

Plaintiffs' claims are all made pursuant to New York law, which the Surrogate's Court is well-equipped to apply. Indeed, although Plaintiffs' first two claims seek relief under New York State Debtor and Creditor Law, they concern standard issues of trusts and estates that are the bread and butter of Surrogate's Court. Therefore, this factor supports abstention as well. *See De Cisneros v. Younger*, 871 F.2d 305, 309 (2d Cir. 1989) ("'[I]t does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties.") (internal quotation marks, alterations and citation omitted).

### f. Adequacy of State Procedures

As discussed above, this case concerns State law and there are no federal rights at stake. Plaintiffs have already availed themselves of the procedures in Surrogate's Court, and the existing proceedings there can be reasonably expected to address Plaintiffs' claims. Indeed, the Surrogate's Court is required to "continue to exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents." New York Surrogate's Court Procedure Act ("SCPA") § 201(3). Therefore, State procedures appear adequate to protect Plaintiffs' rights.

However, Plaintiffs argue that the procedures in Surrogate's Court cannot offer them complete protection because in that forum they would be unable "to file a notice of pendency against the Colorado real property," which is one of the assets allegedly fraudulently transferred to the Revocable Trust. (Dkt. No. 20, at 8-9.) In response, Defendants argue that Plaintiffs can obtain a notice of pendency in Surrogate's Court for property outside of New York State. (Dkt. No. 22, at 10-11.) Defendants are correct. New York law provides that "[a] notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." N.Y. C.P.L.R. § 6501 (McKinney); *see also Moser v. Pollin*, 294 F.3d 335, 345 (2d Cir. 2002) ("[T]he incidental powers of the Surrogate's Court include 'all of the powers that the supreme court would have in like actions and proceedings.'") (quoting SCPA § 209(10)); *Matter of Est. of Young*, 119 N.Y.S.3d 708 (N.Y. Sur. 2019) ("The Court's authority extends to the marshaling of the assets of all of Decedent's property regardless of its location.").

Accordingly, the Court finds that the State procedures in Surrogate's Court are adequate to protect Plaintiffs' rights, and that this factor too weighs in favor of abstention.

### C. Conclusion

For these reasons, the Court finds that this case is parallel to the proceedings involving the parties in Surrogate's Court, and that all of the *Colorado River* factors weigh in favor of abstention. Although the Court is cognizant of the fact that it has an "unflagging obligation" to hear cases properly brought before it, *Niagara*, 673 F.3d at 100, there are overwhelming reasons to abstain here and let matters play out in Surrogate's Court. Therefore, the Court will abstain from exercising jurisdiction and grant Defendants' motion to dismiss. *See also Hoffman, Tr. of Albert B. Grossman Marital Tr. v. Am. Inst. of Indian Stud.*, 21-CV-1105, 2022 WL 1184583, at *9 (N.D.N.Y. Apr. 21, 2022) (abstaining pursuant to the *Colorado River* doctrine where, *inter alia*, the plaintiff's case was parallel to a proceeding in Surrogate's Court, the Surrogate's Court had assumed jurisdiction over the trust at issue, New York State law governed the plaintiff's claims, and there was a strong interest in avoiding piecemeal litigation and potentially duplicative and/or inconsistent rulings); *Phillips*, 252 F. Supp. 3d at 303–04 (abstaining when proceedings in Surrogate's Court were parallel, the Surrogate's Court had assumed jurisdiction over the trust at issue, neither forum was more inconvenient, there was a risk of piecemeal litigation, the Surrogate's Court proceedings had progressed further, State law controlled, and State procedures would adequately protect the plaintiff's interests).

### D. Remaining Arguments

Because the Court finds that *Colorado River* abstention is warranted here, it need not and does not address Defendants' alternative arguments for dismissal. *See, e.g.*, *Cavanaugh v. Geballe*, 28 F.4th 428, 432 n.4 (2d Cir. 2022) (finding no error in district court deciding whether abstention was proper before deciding whether it had jurisdiction, noting that the Second Circuit and the Supreme Court have "reaffirmed that federal courts maintain the inherent flexibility . . .

to choose among threshold grounds for disposing of a case without reaching the merits" (internal quotations omitted) (quoting *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003))).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss for lack of subject-matter jurisdiction (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED without prejudice** under the doctrine of *Colorado River* abstention.

Dated: February 21, 2023
Syracuse, New York

Glenn T. Suddaby
U.S. District Judge